**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America, | Criminal No. 09-126(1) (DWF/RLE) |
| Plaintiff, | |
| v. | **ORDER AND MEMORANDUM** |
| Marcus James Neadeau, | |
| Defendant. | |

Clifford B. Wardlaw and Steven L. Schleicher, Assistant United States Attorneys, United States Attorney's Office, counsel for Plaintiff.

Bruce R. Williams, Esq., Williams Law Office, counsel for Defendant.

This matter is before the Court upon Defendant Marcus James Neadeau's ("Defendant") self-styled *pro se* motion for a new trial, pursuant to Rule 33 of the Federal Rules of Criminal Procedure. The United States opposes the motion.

Based upon the submissions and presentations of the parties, the Court having reviewed the file in this matter, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

**ORDER**

1. Defendant's motion for a new trial (Doc. No. 229), pursuant to Rule 33 of the Federal Rules of Criminal Procedure, is hereby **DENIED**.

Dated: December 4, 2009          s/Donovan W. Frank
                                              DONOVAN W. FRANK
                                              United States District Judge

**MEMORANDUM**

The Defendant was convicted of drug trafficking charges following a jury trial.

**I. Newly Discovered Evidence**

The Defendant asserts newly discovered evidence which forms, in substantial part, the basis of his motion, which seems to revolve around the custodial status and conditions of release of Manuel Sagataw. Defendant asserts that there was an agreement by the prosecution in the case to allow Manuel Sagataw to leave a halfway house and reside with his girlfriend. By implication, Defendant's motion suggests that the custodial status of Manuel Sagataw was revised as consideration for his cooperation with the United States. The United States denies the assertions of the Defendant. Based upon the record before the Court, there is no support for Defendant's assertions.

First of all, notwithstanding Defendant's assertions that co-defendants perjured themselves, the evidence is overwhelming against the Defendant. The Defendant

received a fair trial from a fair and impartial jury. Sufficient evidence exists to support the verdicts reached by the jury.

Evidence of the Defendant's guilt was contained, in substantial part, on wiretap telephone calls and in text messages in which the Defendant was conducting his illegal drug trafficking operation, as the United States asserted. *See* Trial Exhibit 1 (intercepted telephone calls from a wiretap over telephone number 218-368-6833); Trial Exhibit 2 (intercepted text messages between Defendant Marcus Neadeau and Fawn Neadeau); and Trial Exhibit 3 (intercepted text messages between Defendant Marcus Neadeau and his unidentified source of supply). It is true that the United States also called co-conspirators of Defendant Neadeau to describe the manner in which he obtained cocaine and distributed powder and crack cocaine on the Red Lake Indian Reservation. These co-conspirators included his brother-in-law, Manuel Sagataw, whom the Court has mentioned above.

However, the most incriminating evidence of Defendant's guilt came in the form of a recorded telephone conversation introduced by the United States between the Defendant and his wife, co-defendant Vanessa Sagataw, on August 29, 2009. *See* Trial Exhibit 15. In that call, the Defendant and co-defendant Vanessa Sagataw discussed the pending charges. After reading portions of the superseding indictment, the Defendant stated clearly on the tape, "I'm guilty of this 100 percent and I know that for a fact." As pointed out by the United States, Defendant went on to state that despite his guilt, the United States does not win every case and then he expressed his opinion that other co-

3

defendants pled guilty because they were afraid. The United States used this taped statement as the equivalent of a confession by the Defendant to each and every element of the charges made against him.

The record before the Magistrate Judge in this case establishes that the initial placement of Manuel Sagataw in a halfway house was over the objection of the United States which unsuccessfully requested detention. Manuel Sagataw's release from the halfway house was a decision made by the Magistrate Judge, based upon the recommendation of Pretrial Services at the request of his defense counsel to reconsider his release status. The United States played little, if any, role in the Magistrate Judge's decision which, as it turns out, is consistent with similarly situated defendants as circumstances change. In this instance, one of the stated reasons for the Defendant's renewed request for release was his pregnant girlfriend. This Court is aware, even though it did not play any role in the decision to release Manuel Sagataw, that a concern for a number of the co-defendants was a return to Red Lake might well subject one or all co-defendants to intimidation or violence as a result of the cooperation with the United States. Once the Defendant had testified and the jury trial had concluded,[1] the concern that the United States had and that the Pretrial Services Officer had, no longer existed–namely, Manuel Sagataw would be intimidated or threatened and not participate in the trial.

---

[1] The Court declared a mistrial as to Vanessa Sagataw because the jury was unable to reach a unanimous verdict.

Based upon the record before it, in the Court's view, there is little, if any, likelihood that this newly discovered evidence would result in an acquittal of the Defendant. *United States v. Jones*, 34 F.3d 596 (8th Cir. 1994); *United States v. Bednar*, 776 F.3d 236 (8th Cir. 1985). While there may have been some limited impeachment value to this evidence, assuming things occurred as Defendant has asserted–which the record would suggest otherwise–there is no likelihood that this "newly discovered evidence" would have resulted in a different result before the jury that heard this case, given the overwhelming evidence against the Defendant.

## II. Ineffective Assistance of Counsel

Simply stated, the record does not support the assertions of the Defendant that his counsel was ineffective. None of the assertions raised by the Defendant rise to the level of an error under the first prong of the *Strickland* test. *See Strickland v. Washington*, 466 U.S. 668 (1984).

In order to establish ineffective assistance of counsel, a defendant needs to prove (1) his counsel's "representation fell below an objective standard of reasonableness"; (2) "but for counsel's unprofessional errors, the result of the proceeding would have been different."

Defendant received a fair trial from a fair and impartial jury. One reason for that is that the record belies the notion that Defendant's trial attorney was ineffective. He was not. Trial counsel for the Defendant was a seasoned and experienced trial lawyer who properly and competently represented the Defendant. Trial counsel's representation not

only did not fall below an objective standard of reasonableness, but the Court cannot envision any trial strategy or other decision made by Defendant's trial counsel or any other trial counsel that would have affected the outcome of the case, based upon the overwhelming evidence and the record before the Court. To suggest otherwise would be to ignore the evidence that was submitted to the jury, not the least of which was numerous wiretaps, one of which could be fairly interpreted as a confession to the crime charged.

For these reasons, the Court respectfully denies the motion of the Defendant for a new trial based upon newly discovered evidence and based upon ineffective assistance of counsel.

D.W.F.