UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,	Criminal No. 09-126 (DWF/RLE)

          Plaintiff,

v.	**ORDER AND MEMORANDUM**

Marcus James Neadeau,

          Defendant.

---

Clifford B. Wardlaw and Steven L. Schleicher, Assistant United States Attorneys, United States Attorney's Office, counsel for Plaintiff.

Kevin M. O'Brien, Esq., O'Brien Law Office, counsel for Defendant.

---

This matter is before the Court upon a motion for new trial brought by Defendant Marcus James Neadeau pursuant to Rule 33 of the Federal Rules of Criminal Procedure. (Doc. No. 274.) The United States opposes the motion not only because it is procedurally barred because of its lack of timeliness, but also because it fails on the merits.

Based upon the written submissions and presentations of counsel, the Court having reviewed the file in this matter, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

**ORDER**

1. Defendant Marcus James Neadeau's motion for a new trial, pursuant to Rule 33 of the Federal Rules of Criminal Procedure (Doc. No. [274]), is hereby **DENIED**.

2. Defendant Marcus James Neadeau's motion for an evidentiary hearing (Doc. No. [274]) is hereby **DENIED**.


Dated: March 18, 2010   s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge


**MEMORANDUM**

**Introduction**

On October 9, 2009, the Defendant was found guilty of conspiracy to distribute and possess with the intent to distribute cocaine. The Defendant previously moved for a new trial, both with trial counsel, who is no longer representing the Defendant, and on a *pro se* basis. This Court, in an Order filed on December 4, 2009 (Doc. No. 235) denied Defendant's motion for a new trial based upon newly discovered evidence and ineffective assistance of counsel.

Current counsel now brings a new motion for a new trial based upon disruptive behavior by government agents and witnesses during Defendant's trial that occurred in the hallway immediately outside the courtroom. Alternatively, Defendant has requested

that the Court order an evidentiary hearing to determine the effect, if any, of the behavior, as observed by the Court during the trial, on the jurors. This motion has been brought pursuant to Rule 33(a) and Rule 45(b)(1)(B).

The United States opposes this second motion of the Defendant by current counsel nearly three months after his conviction, asserting that it is procedurally barred as untimely and that it fails on its merits. The United States is correct in asserting that the matter is untimely, to the extent that it was filed nearly three months after the verdict, and considering that current counsel was appointed on January 21, 2010. Even assuming it was the Defendant's own conduct and inability to work with his court-appointed counsel that caused the delay, the Court will consider the motion on the merits. To that extent, the Court extends the time for filing the motion, pursuant to Rule 45(b)(1)(B).

**Conduct of Government Witnesses in Hallway Outside of Courtroom**

As well-documented in the trial transcript of this case, and in the memorandums of counsel, it is the words from this Court's mouth that give rise to this second motion for new trial. As noted by defense counsel, the Court, outside the presence of the jury, discussed the behavior of government witnesses or law enforcement officers assisting the government in the trial, for their behavior outside of the courtroom, as observed by the Court through the small window in the courtroom door and based upon the noise the Court heard at times from the bench.

As accurately quoted by current defense counsel in his memorandum to the Court, the following exchange took place in the courtroom outside the presence of the jury:

| Mr. Schleicher: | Yesterday, Your Honor, you had expressed some irritation at some agents who were looking in the window. |
| --- | --- |
| The Court: | Well, they were doing more than just looking in the window, for the record. For the record, they had been standing up and they had been leering in the windows all week. Everybody has seen it. And in my 25 years as a judge, I have never seen behavior like this from anybody, especially agents. |
| | They were like this, they were pacing back and forth like we were inconveniencing them. Jurors saw them, my Court Reporter saw it. Everybody else saw it. And anybody in here who didn't see it . . . and I could hear them talking way up here, completely disrespectful, completely indifferent. And the jury, I just said, the people out there. There was one or two of them doing it all week. Comments had been made by people up here to me and I just had enough. |

(Trial Transcript, p. 539, l.6-l.23.)

First of all, there can be no question that Federal Rule of Criminal Procedure 33 provides that the Court may grant a new trial to a defendant if the interests of justice so requires. *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002). However, there is also no question that, for a number of reasons that the Court will set forth below, the interests of justice do not require a new trial or an evidentiary hearing. The Defendant received a fair trial from a fair and impartial jury.

The transcript clearly establishes that the undersigned was upset with the conduct of certain government witnesses and agents in the hallway immediately adjacent to the courtroom during the trial. The Court stands by its remarks, that it will not repeat here, made during the trial outside the presence of the jury. The Court continues to condemn

4

this behavior, in part because it was distracting to the undersigned, his court reporter, and other court staff who had immediate site lines to the courtroom door window.  It is equally clear that nothing that occurred during the trial suggests that, even assuming one or more jurors did see the frowns, the pointing, perhaps out of frustration or impatience with the pace of the trial, or for whatever reason, that the jurors did not associate the conduct with either the prosecution or the defense.  The jurors had no way of knowing who the individuals were.  In fact, the Court had to inquire as to specifically who they were, at least early on in the trial.[1]

Consequently, the Court did not receive any complaints from the jurors and, even assuming there was a distraction factor, there was no way in which these jurors could identify who the one or two individuals were who were pacing back and forth; gesturing and pointing fingers at times; and staring through the glass, with their face up against the window. Even assuming that one or more jurors observed some of this behavior, there is no likelihood that it affected the outcome of this case or otherwise distracted the jury in such a way so as to affect the outcome of the case.

---

[1] To the credit of the supervising agent who was in the courtroom for the entire trial and who was professional at all times, he spoke to the Court, post-verdict, and was apologetic for the behavior in the hallway.  Moreover, the Court misinterpreted his frown during the Court's criticism of the other individuals' behavior in the hallway, when the lead agent frowned.  To the credit of the supervising agent, it was later learned by this Court that the frown was disapproval over the conduct in the hallway of the agent or agents, not with the Court's remarks.  That explanation by the supervising agent, who was in the courtroom for the entire trial, is consistent with the professional demeanor of the agent during the trial.

Moreover, given the overwhelming evidence against the Defendant, including the recorded telephone conversations introduced by the United States between the Defendant and his wife, co-defendant Vanessa Sagataw, with specific reference to the conversation of August 29, 2009, there is little, if any, likelihood that any of this behavior affected the verdicts. Given the overwhelming evidence against the Defendant, there really is no likelihood that this conduct would have resulted in a different result before the jury that heard this case. For this Court to conclude or suggest otherwise would be to essentially ignore the evidence that was submitted to the jury, including the numerous incriminating wiretaps that the jury heard during the course of trial.

**Evidentiary Hearing**

Based upon the record before the Court, there is no likelihood, in the Court's view, that there was any extraneous influence improperly brought to bear upon any one juror or the jury as a group. Put another way, there is no possibility, in the Court's view, that the extraneous distractions of the government agents or witnesses deprived the Defendant of a fair trial, resulted in bias, or in any way prejudiced the Defendant.

Current trial counsel for the Defendant, an experienced defense lawyer, is correct in concluding that the undersigned was upset with the agent's or agents' conduct in the hallway outside of the courtroom. However, the Court's disapproval of such conduct is not tantamount to prejudice to the Defendant or the United States, for that matter. As the Court noted at the inception of this Memorandum, the Defendant received a fair trial from a fair and impartial jury, notwithstanding the behavior of one or two individuals in the

hallway outside of the courtroom during the course of the trial. There was no miscarriage of justice.

For the reasons stated, the Court has respectfully denied the Defendant's motion for a new trial or, in the alternative, for an evidentiary hearing.

D.W.F.